201 N.J. Super. 416 (1985)
493 A.2d 544
MARY TOMEO, PLAINTIFF-APPELLANT,
v.
NORTHERN VALLEY SWIM CLUB, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 19, 1985.
Decided May 6, 1985.
*417 Before Judges PRESSLER, BRODY and RICHARD S. COHEN.
Browne, Buckalew & DeMarrais, attorneys for appellant (Michael DeMarrais on the brief).
Harwood, Lloyd, Ryan, Coyle & McBride, attorneys for respondent (Bernadette Gordon on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The jury returned a no-cause verdict in this personal injury action. Plaintiff contends that the verdict is tainted by the prejudicial and false inference raised by defendant's attorney in his summation that his client is uninsured. We agree and take the opportunity to provide trial judges with some guidance in dealing with this problem.
*418 Plaintiff, a 63-year-old woman, was emerging from defendant's commercial swimming pool when she slipped and fell, suffering severe and permanent leg injuries. The pool had the appearance of a natural pond bordered by a sandy beach. A cement "curb," seven inches wide, encircled the edge of the pond. It served to contain the water in the pond and keep sand from slipping into it. A person emerging from the water had to step up about 8 to 11 inches onto or over the curb. The sand on the beach side of the curb varied from being even with or a little below the top of the curb. Defendant had painted the curb annually for many years before the accident. Plaintiff claimed that the paint caused the curb to become smooth so that it was dangerously slippery when wet. She allegedly lost her footing when she stepped on it. Experts testified for both sides as to the slipperiness of the top of the curb. Their testimony was inconclusive because the degree of slipperiness varied along the length of the curb and there was no evidence as to exactly where plaintiff fell. The trial focused entirely on the liability issue. Defendant offered no evidence respecting damages.
Defendant's trial counsel, a certified civil trial attorney, included the following in his summation:
When we first started this case, in the opening statements, I mentioned a couple things to you. First of all, I told you that my clients, the Northern Valley Swim Club, was a family owned organization. I produced Mrs. Limmer, the grandmother, who originally, with her late husband, purchased the place some thirty-one years ago, and still owns it today, and has owned it all the way, and she, I told you that she's the secretary-treasurer, or something like that.
The granddaughter testified, Suzanne. She works there and has worked on and off there for the last ten years.
Suzanne's mother, Mrs. Kober, is an officer of the corporation, and Mrs. Kober's husband.
And of course, the plaintiff's attorney, Mr. De Marrais, read from the deposition transcript from a John Limmer. That deposition, that sworn testimony, was given by John Limmer, which was Mrs. Limmer's son, and that was taken in August of 1982.
John Limmer had died since that time that he was deposed, and obviously, could not testify.

*419 But one of the points I wanted to show you was that number one, was this was a family owned and run organization....
As I told you from the outset, now, when  something I did say was that the mere happening of an accident, the mere occurrence where someone is injured, is not, in and of itself, an establishment or a proof that someone else was negligent, and that's a very important concept to understand, because when someone comes up to anyone and says, "I've been injured and I want you [sic] money. I want your possessions. I want to take your house," they must back up the allegations to establish that.
....
Citizens, jurors, people in general are governed by laws. People cannot take your possessions, your job, or other things without complying with the law. In a civil case, plaintiff, to recover, must prove something to take the defendant's money 
At this point plaintiff's attorney interrupted with an objection. The following then transpired in the presence of the jury:
[PLAINTIFF'S ATTORNEY]: Your Honor, it's an awfully long time since I've objected to a summation. There's no allegation or any proof here that a statement like that, we want to take your house. I think that's improper for counsel to make a statement like that in summation. I don't care when it's being made, that Mrs. Tomeo is here to take their money, to take their house. It's just entirely improper, and I think the jury should be so instructed.
[DEFENDANT'S ATTORNEY]: I just use that as an analogy. I'm not going to 
[PLAINTIFF'S ATTORNEY]: You said 
[DEFENDANT'S ATTORNEY]: It's an analogy.
THE COURT: As long as the jury knows that it was being used as an analogy as opposed to something that would probably happen.
I will instruct you further on the law concerning damages in this case and what the affect [sic] of damages are and what you are to consider in assessing damages.
You may continue.
[DEFENDANT'S ATTORNEY]: The plaintiff is not here seeking your sympathy or seeking my sympathy or apology or anything else. She's seeking money damages from my client. That's what this case is all about.
At the completion of defendant's summation, the jury was excused on the request of plaintiff's attorney and the following was said:
[PLAINTIFF'S ATTORNEY]: If your Honor please, I think the remarks of counsel which I objected to, which stated that the plaintiff here, and I quote, "Wanted to take the money of these defendants," and quote, wanted to take their house or your house, is entirely improper.
Not only is it improper, but I think that I should be entitled to, at this point in this case, tell the jury that there is in fact insurance and tell the jury that there *420 is absolutely no danger that these people will lose one penny if there is a verdict....
I don't know how you can correct it by instruction unless you or I have the right to tell them that they will absolutely not suffer monetarily. Certainly, you can make a general statement that they are asking for money, but to say that, "I want to take your house" 
THE COURT: I'm not going to permit the word insurance to enter the case, but I'll tell them that they are not going to lose their house, period, if this jury comes in with a verdict in favor of the plaintiff.
In concluding his instructions to the jury the trial judge made the only reference to the problem as follows:
Now, I just want to reemphasize something because I'm going to tell you that you are again, not to let passion or prejudice or bias enter into your deliberations. I do not want any of you to feel that the defendant's house will be taken, and I just want to emphasize that so that there is no confusion in your minds, because I'm going to tell you again in a moment that you should not permit sympathy, passion, bias or prejudice or your ideas of what the law should be or whether the law sought to be enforced in this case is a good and desirable law to interfere with or effect [sic] you in any degree.
In order to win a verdict based upon sympathy, defendant's attorney displayed three generations of the family who own defendant and operate its business, and falsely implied to the jury that they would face financial ruin should there be a verdict for plaintiff. The fact is that defendant is fully insured for any reasonable verdict that the jury could have returned.
We are unpersuaded by the feeble efforts of defendant's attorneys on this appeal and at trial to explain away this reprehensible tactic by pretending that the implication of no insurance was intended to refer to some hypothetical defendant and not the defendant in this case. Justice Francis, then a member of this court, said the following about such tactics:
It seems to us that the prejudice suffered ordinarily by a plaintiff through the improper revelation of absence of insurance coverage by the defendant is likely to be even greater than when the disclosure of such protection of the defendant is injected by the plaintiff. Certainly it cannot be said to be less hurtful. But more than this, the act of conveying the information to the jury by a defendant is more deserving of condemnation when the actor knows that the implied fact is untrue. And so the inclination of a court to find prejudicial error in such a situation is more readily stimulated.
It is true that the plaintiffs did not ask for a mistrial when the objection to counsel's remark was sustained. Nor did the trial judge instruct the jury to *421 disregard the statement. However, we think the transgression of the ordinary rules of fair play was so flagrant that on the basis of plain error another day in court should be given to the probable victims of their adversary's disingenuousness....
[Haid v. Loderstedt, 45 N.J. Super. 547, 550-551 (App.Div. 1957)]
Plaintiff here is entitled to a new trial for the same reasons.
The trial judge did not cure the error in his charge. He failed to tell the jury that defendant's principals would not lose their property to a plaintiff's verdict. He said, "I do not want you to feel that the defendant's house will be taken ... because ... you should not permit sympathy ... to ... effect [sic] you in any degree." These words tend to confirm the false implication that the house will be lost if the jury returns a verdict for plaintiff and merely admonishes the jurors not to let that bother them.
When the jury learns of a fact known to be false which is irrelevant to the issues being tried but has the clear capacity to turn them for or against a party, the jury must be told the truth promptly and cautioned that the fact is not to be considered in their deliberations. If, however, the judge concludes that a cautionary instruction will not overcome the prejudicial effect of telling the jury the truth, he must declare a mistrial.
When defense counsel creates a false impression of no insurance, ordinarily the trial judge should first give him the opportunity of correcting that impression so that he may explain, if it is the case, that he raised the inference inadvertently. Before the incident passes, however, the trial judge must be satisfied that the jury is unequivocally advised, by counsel or by the court, that the defendant is insured but that they are to disregard that fact because it is not relevant to the issues they are to determine. See St. Pierre v. Houde, 269 A.2d 538, 540 (Me.Sup.Jud.Ct. 1970). Having to advise the jury in these circumstances that a defendant is insured would ordinarily not be a reason to declare a mistrial. See Runnacles v. Doddrell, 59 *422 N.J. Super. 363, 367-369 (App.Div. 1960) (mere mention of insurance does not require mistrial).
Reversed and remanded for a new trial.