**Martin CANAPE, Plaintiff–Appellant,**

**and**

**Colorado Compensation Insurance Authority, Plaintiff–Intervenor and Intervenor–Appellant,**

**v.**

**David PETERSON, d/b/a Western Hills Construction, Defendant–Appellee.**

**No. 93CA0016.**

Colorado Court of Appeals, Div. IV.

Feb. 24, 1994.

Rehearing Denied March 31, 1994.

Certiorari Granted Aug. 8, 1994.

LeHouillier & Associates, Patric J. Le-Houillier, Joseph R. Winston, Colorado Springs, for plaintiff-appellant.

Hale Pratt Midgley Hackstaff & Goldberg, P.C., Charles M. Pratt, Denver, for plaintiff-intervenor and intervenor-appellant.

Carla McCord Albers & Associates, Carla McCord Albers, Colorado Springs, for defendant-appellee.

Opinion by Judge MARQUEZ.

Plaintiffs, Martin Canape and Colorado Compensation Insurance Authority, appeal a judgment entered on a jury verdict in favor of defendant, David A. Peterson d/b/a Western Hills Construction, on plaintiffs' claims of negligence. We affirm.

On April 10, 1991, plaintiff Canape was delivering shingles to a garage being built by defendant, a general contractor, at a time when neither defendant, nor any of his employees, was present. In the process of stacking the material on the roof, plaintiff Canape fell through a hole in the uncompleted roof and sustained injuries.

## I.

Plaintiffs first contend that the trial court erred in refusing to give a negligence *per se* jury instruction based upon a violation of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651, et seq. (1988). We disagree.

A party is entitled to a jury instruction as to his legal theory when the instruction is consistent with existing law and is supported by the evidence. *Federal Insurance Co. v. Public Service Co.,* 194 Colo. 107, 570 P.2d 239 (1977).

■ Violations of a statute adopted for the public's safety may be negligence *per se* if it is established that the violation proximately caused the injury. However, before this doctrine can apply, the injured party must show that he or she is a member of the class that the statute was intended to protect, that the injuries suffered were of the kind the statute was enacted to prevent, and that the statute prescribes or proscribes specific conduct. *Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989) (liquor code violation); *Hageman v. TSI, Inc.,* 786 P.2d 452 (Colo.App.1989) (federal highway safety regulation); *see State v. Moldovan,* 842 P.2d 220 (Colo.1992).

The specific OSHA subpart upon which plaintiffs rely here is entitled "Floor and Wall Openings." This subpart applies "to temporary or emergency conditions where there is danger of employees or materials falling through floor, roof, or wall openings, or from stairways or runways." 29 C.F.R. § 1926.500(a) (1990). A "floor opening" is defined as "[a]n opening measuring 12 inches or more in its least dimension in any floor, roof, or platform through which persons may fall." 29 C.F.R. § 1926.502(b) (1990).

This subpart also requires that: "Temporary floor openings shall have standard railings." 29 C.F.R. § 1926.500(b)(7) (1990). However, 29 C.F.R. § 1265.500(b)(1) (1990) provides that: "Floor openings shall be guarded by a standard railing and toe boards or cover, as specified in paragraph (f) of this section." Paragraph (f) requires that a floor opening cover be "capable of supporting the maximum intended load and so installed as to prevent accidental displacement." 29 C.F.R. § 1926.500(f)(5)(ii) (1990).

Although the trial court, over defendant's objection, allowed testimony that OSHA regulations required railings around the roof opening, the trial court refused to give a negligence *per se* instruction based on these regulations. First, the court determined that because plaintiff was not engaged to work at the site, he was not within the class of persons intended to be protected. The court also ruled that these regulations were not applicable to the facts of this case. We affirm the trial court's ruling on other grounds.

■ Defendant argues that, even if it is assumed that plaintiff Canape was within the class protected for purposes of OSHA violations, 29 U.S.C. § 653(b)(4) (1988) precludes an instruction for negligence *per se.* We agree.

That section provides:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries ... arising out of, or in the course, of employment.

Courts have reached varying results on whether this OSHA directive precludes allowing OSHA regulations to be used to establish negligence *per se*. We conclude that the more persuasive view is that a negligence *per se* theory of liability "operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles." *See Wendland v. Ridgefield Construction Services, Inc.*, 184 Conn. 173, 439 A.2d 954, 956 (1981). Thus, application of a negligence *per se* instruction affects the common law rights, duties, and liabilities of employers and employees. *Wendland v. Ridgefield Construction Services, Inc., supra; Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987); *see also Ries v. National Railroad Passenger Corp.*, 960 F.2d 1156 (3rd Cir.1993); *Albrecht v. Baltimore & Ohio R.R. Co.*, 808 F.2d 329 (4th Cir.1987); *Hebel v. Conrail, Inc.*, 475 N.E.2d 652 (Ind.1985); R.D. Moran, *OSHA Handbook* § 10.3 (2d ed. 1989) ("because some 20,000 or more OSHA standards exist, it is difficult to convincingly argue that their use as evidence has not 'enlarged' an employer's 'liabilities,' a concept that [§ 653(b)(4)] ostensibly prohibits," and "OSHA itself has conceded that many of the 'consensus' standards it adopted in 1971 are for 'comfort and convenience' of employees and have *no* direct or immediate effect on employee safety and health").

We thus elect not to follow those cases which conclude that the intent of § 653(b)(4) was merely to ensure that OSHA was not read to create a private cause of action, and thus, imposing negligence *per se* for an OSHA violation is not precluded. *See Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir.1985); *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986).

Further, we disregard those cases which have held that OSHA regulations may be used to establish negligence *per se*, but have done so without addressing 29 U.S.C. § 653(b)(4). *See Dixon v. International Harvester Co.*, 754 F.2d 573 (5th Cir.1985) (OSHA regulations may only be used to establish negligence *per se* when the plaintiff is an employee of defendant); *Kelley v. Howard S. Wright Construction Co.*, 90 Wash.2d 323, 582 P.2d 500 (1978); *see also Teal v. E.I. DuPont De Nemours & Co.*, 728 F.2d 799 (6th Cir.1984); and *Minichello v. U.S. Industries, Inc.*, 756 F.2d 26 (6th Cir.1985) (containing apparently contrary statements on the issue).

Because of our disposition of this issue, we do not address the trial court's grounds for refusing the instruction.

## II.

We also reject plaintiffs' contention that the trial court erred in refusing to instruct the jury on the doctrine of *res ipsa loquitur*.

■ *Res ipsa loquitur* is a rule of evidence, and as such, it gives rise to a rebuttable presumption of the defendant's negligence but does not constitute a substantive claim for relief. *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109 (Colo.1991).

■ When a plaintiff introduces sufficient evidence to establish the presumption of negligence, the trial court must instruct the jury as to the nature and effect of that doctrine. *Ravin v. Gambrell*, 788 P.2d 817 (Colo.1990).

■ To demonstrate that the doctrine is applicable, a plaintiff must produce evidence which, when viewed in a light most favorable to the plaintiff, establishes each of the following elements as being more probable than not: (1) the event is the kind that ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated by the evidence; and (3) the presumed negligence is within the scope of the defendant's duty to the plaintiff. However, a plaintiff need not eliminate every possible cause other than the defendant's negligence to establish a prima facie case for the applicability of the *res ipsa loquitur* doctrine. *Ravin v. Gambrell, supra.*

Here, the trial court concluded that, even with the evidence viewed in the light most favorable to plaintiffs, plaintiffs did not sufficiently eliminate responsible causes other than defendant's negligence.

■ On the day of the accident, the roof was partially unfinished. In addition to the

hole through which plaintiff Canape fell, the corners of the roof were also open. Although defendant's employee later testified he left the hole uncovered, plaintiff Canape's co-worker testified that he discovered the loose board in place on the roof and that he kicked the board and put it back with his foot. He further testified that he stepped on the board and noticed that it was not nailed down. He stated that he "just told [Canape] to watch out, it was loose."

Canape testified that he misunderstood his co-worker's warning and, therefore, did not acknowledge the warning by examining the loose board. Furthermore, plaintiffs' own expert testified that the workers should have either nailed the board down or should not have off-loaded the shingles on the roof.

Under these circumstances, we conclude that it is at least equally likely that something other than defendant's negligence was the cause of plaintiff Canape's injuries. *See Holmes v. Gamble*, 655 P.2d 405 (Colo.1982); *Martin v. Minnard*, 862 P.2d 1014 (Colo. App.1993); *Freedman v. Kaiser Foundation Health Plan*, 849 P.2d 811 (Colo.App.1992). Thus, the trial court's ruling was correct.

### III.

Plaintiffs next contend that the trial court erred by allowing the introduction of hearsay based upon the excited utterance exception. We disagree.

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2).

An accident such as occurred here is a sufficiently startling event to result in an excited utterance. *See W.C.L. v. People*, 685 P.2d 176 (Colo.1984). Thus, we focus our inquiry on whether the statement was a spontaneous reaction to the event or a result of reflective thought.

Factors to be considered in determining whether the statement was spontaneous include the lapse of time between the startling event and the out-of-court statement; whether it was made in response to an inquiry; whether it is accompanied by outward signs of excitement or emotional distress; and the choice of words employed by the declarant to describe the experience. *W.C.L. v. People, supra.*

Here, declarant, who was Canape's co-worker and the same person who testified he had earlier observed the loose board and warned Canape, testified that, immediately after the fall, he secured the material on the roof so that it would not fall through the hole. He got down off the roof and went to check on plaintiff Canape. Declarant then testified:

> When I first got down there, he was rolling around, and he tried to stand up, and he figured he couldn't. He laid back down. I asked him if he wanted us to call an ambulance. He said no, he'd be all right. And after he laid there for a couple of minutes, we figured out that he needed an ambulance, and we called the ambulance. And he was rolling around saying it hurt—his back hurt. And there was some plywood inside the garage that were about three and a half feet wide, eight feet long, so we got a couple of pieces, and when he rolled over, we put them underneath him, and he rolled back, so it would be a little flatter for him so he wouldn't be lying on the ground.

The owner of the garage testified that five to ten minutes after she noticed Canape on the ground, she stepped onto the porch to find out what was happening. The owner testified that declarant walked up to her and they talked. According to her, declarant told her that "there had been an accident, that one of his workers had fallen through a hole in the roof, and that not to worry, that they had known that the hole was there, and that they had covered it with something they had found, and that we weren't to blame; at fault." She also testified to a similar conversation with declarant and his supervisor approximately ten minutes later. This later conversation, however, did not contain any statements as to who actually covered the hole, which is the main point of contention.

In addition to this testimony, declarant testified that the event was upsetting and that he was concerned about Canape until

after the Flight for Life helicopter left. The other worker on the site testified that declarant looked dazed and scared.

We conclude that this evidence is sufficient to support the trial court's ruling. *Compare Cheney v. Hailey,* 686 P.2d 808 (Colo.App. 1984) and *People v. Handy,* 657 P.2d 963 (Colo.App.1982) *with People v. Koon,* 724 P.2d 1367 (Colo.App.1986) and *People v. Mares,* 705 P.2d 1013 (Colo.App.1985).

■ The trial court is in the best position to consider the effect of the startling event on the declarant, and thus, it is afforded wide discretion in determining admissibility under this exception. *See People in Interest of O.E.P.,* 654 P.2d 312 (Colo.1982).

Furthermore, Canape testified that the fall took place the day after he and declarant attended a safety meeting specifically geared toward looking for holes in roofs. Thus, declarant had every reason to protect his and his company's interests as opposed to those of the owner. This statement, however, was clearly against both his and his company's interests and would have been admissible as a statement against interest if the company had been a party opponent. *See Halliburton v. Public Service Co.,* 804 P.2d 213 (Colo.App. 1990). In addition, at the time when the statements were made, declarant could not have known that the company would not be named a defendant in this suit.

■ Finally, declarant was subject to examination by defendant's counsel and was recalled to the stand after the statements were admitted. At that time, declarant denied placing the board in the hole or telling the owner they had done so.

For these reasons, we conclude that error, if any, was harmless.

## IV.

Last, plaintiffs claim that because one portion of defendant's testimony was intended to convince the jury that he could not pay a large judgment, the trial court erred by not allowing plaintiffs to introduce evidence that defendant had liability insurance. We disagree.

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully." CRE 411. This rule, however, is subject to exceptions.

■ Here, defendant testified without objection that he is a missionary builder in Alaska, that it was not a paid job, and that he gets "support from whoever wants to help" him.

Plaintiffs, citing *Cook Investment Co. v. Seven–Eleven Coffee Shop, Inc.,* 841 P.2d 333 (Colo.App.1992) and *Tomeo v. Northern Valley Swim Club,* 201 N.J.Super. 416, 493 A.2d 544 (A.D.1985), argue that this testimony "opens the door" to admitting evidence of insurance. The trial court, however, excluded such evidence.

■ Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. This determination is within the sound discretion of the trial court. *People v. Loscutoff,* 661 P.2d 274 (Colo.1983).

The trial court relied on several factors in making this determination. First, unlike the cases relied on by plaintiffs, here, there was no contemporaneous objection or motion for a mistrial. *See ·Spratt v. Alsup,* 468 N.E.2d 1059 (Ind.Ct.App.1984); *but see Tomeo v. Northern Valley Swim Club, supra.*

More importantly, defendant's statements were neither knowing and flagrant misstatements about the presence or absence of insurance, nor were they as prejudicial as the statements in the cases cited by plaintiffs. *Cf. Cook Investment Co. v. Seven–Eleven Coffee Shop, Inc., supra* ("its coming out of his pocket"); *Tomeo v. Northern Valley Swim Club, supra* ("I want you [sic] money. I want your possessions. I want to take your house.")

Second, indirect information as to defendant's insurance coverage was relayed to the jury on two separate occasions. During voir dire, the court asked whether any prospective juror had ever been "an officer, director, employee, agent, or shareholder of the State Farm Fire and Casualty Insurance Company." In addition, over objection by defense counsel, plaintiffs' counsel asked the home-

owner if she had sent a letter to State Farm. The homeowner responded, "I believe I did, yes."

Last, the trial court instructed the jury: "You must not be influenced by sympathy or prejudice for or against any party in this case." In the absence of any indication to the contrary, we will presume that this instruction was followed. *People v. Goff,* 187 Colo. 103, 530 P.2d 514 (1974).

Thus, we conclude that in excluding plaintiffs' proffered testimony, the trial court did not abuse its discretion.

The judgment is affirmed.

PLANK and ROTHENBERG, JJ., concur.