**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4858-16T2

MIA JANE STEPHENS,
General Administrator and
Administrator ad Prosequendum
of the Estate of Andre Henry,
Deceased,

      Plaintiff-Appellant,

v.

48 BRANFORD PLACE ASSOCIATES,
LLC, DUBROW MANAGEMENT CORP.,
S.W.A.T. SECURITY, DAVID CONSTANTINE
BROOKS a/k/a MAVADO, individually and d/b/a
MANSION RECORDS and GULLY SIDE
PROMOTIONS, GRAMMY KID ENERTAINMENT,
DAVID DUBROW, individually and as the servant,
agent, and employee of 48 BRANFORD PLACE
ASSOCIATES, LLC and DUBROW
MANAGEMENT CORP., STEVEN LENTER,
individually and as the servant, agent and employee
of 48 BRANFORD PLACE ASSOCIATES, LLC,
177 FRANKLIN STREET ASSOCIATES, LLC,
CHEN AND RICO CORP., POPCORN PLAZA,
INC., PALLADIUM ASSOCIATES, LLC, and
HORACE BINGHAM, individually and as the servant,
agent and employee of PALLADIUM ASSOCIATES,
LLC, KACY RANKINE, individually and as the
servant, agent and employee of PALLADIUM

ASSOCIATES, LLC, SENSATIONS
ENTERTAINMENT GROUP, LLC, and
JONATHAN RASHEED HARRIS,
individually and as the servant,
agent and employee of SENSATIONS
ENTERTAINMENT GROUP, LLC,
CURTIS JONES and KELLY
WILLOUGHBY d/b/a SENSATIONS
ENTERTAINMENT COMPLEX and
SOBEL AFFILIATES INC.,

     Defendants,

and

RAMELLE MASSEY, individually
and as the servant, agent and employee
of MASSEY INSURANCE AGENCY,

     Defendants-Respondents.
_____

Argued October 2, 2018 – Decided January 16, 2019

Before Judges Rothstadt, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0070-14.

Harvey R. Pearlman argued the cause for appellant (Friedman, Kates, Pearlman & Fitzgerald, PA, attorneys; Harvey R. Pearlman, of counsel and on the briefs; James Fitzgerald, on the briefs).

Colin P. Hackett argued the cause for respondents (Lewis, Brisbois, Bisgaard & Smith, LLP, attorneys; Colin P. Hackett, of counsel and on the brief).

PER CURIAM

Plaintiff, Mia Jane Stephens, appeals from the Law Division's May 23, 2017 judgment dismissing her complaint, which the trial court entered after a jury returned a "no cause" verdict in favor of defendants, Massey Insurance Agency (the Agency) and its principal, Ramelle Massey. In her complaint, plaintiff, who was the administrator of her late husband Andre Henry's estate, alleged that defendants negligently failed to obtain appropriate insurance coverage for the business that leased the premises where her husband was killed during a shooting.

On appeal, plaintiff argues that the trial court erred by 1) not identifying her to the jury as the administrator of her husband's estate; 2) not charging the jury with the correct duty of care that defendants owed to her husband; 3) allowing defense counsel to insinuate to the jury that defendants would have to personally pay a judgment that was covered by insurance; and 4) failing to tailor its charge to the facts of the case. Plaintiff contends that the court's errors denied her a fair trial and further, that the weight of the evidence did not support the jury's verdict. For the reasons that follow, we affirm.

A-4858-16T2

## I.

The facts giving rise to plaintiff's claim are summarized as follows. Plaintiff's husband was tragically and randomly shot and killed during a concert at business premises that were operated by Palladium Associates (Palladium) and owned by 48 Branford Place Associates (48 Branford). Palladium's and 48 Branford's liability insurance policies excluded coverage for an assault and battery at the premises.

Palladium's principal, Kacy Rankine, obtained its policy through the Agency. At the trial held in this matter, the dispute focused on whether Massey secured the correct insurance for Palladium based upon the information Rankine provided to her.

According to Massey, Rankine contacted her in writing and advised that he and another individual were opening a business at the subject premises and taking over the existing lease. Rankine contacted Massey because he had obtained insurance from the Agency on prior occasions for another business that was primarily involved with producing concerts at various locations. According to Massey, Rankine wrote to her asking her to secure both liability and excess "umbrella" coverage for the new business. His note stated that he was opening a "dance hall."

Massey called Rankine to obtain a description of the premises and for clarification of the business' proposed operations. She understood from that conversation that Rankine would be operating a "ballroom café," which he said would be used as a banquet facility for weddings, birthdays, and similar events, but there was no liquor license and the premises would not be used for entertainment purposes. In their conversation, Rankine described the type of food that would be served and the building.

Massey took notes of her conversation with Rankine and based on the information he provided, she completed an application and sought quotes for coverage, which she later provided to Rankine. On the application, Massey noted that Palladium planned to use the premises for a banquet hall. When she quoted Rankine the premium for umbrella coverage, Rankine stated that he was still negotiating the lease and would get back to Massey, but never did. For that reason, Massey only obtained the basic liability policy that excluded coverage for assault and battery to invitees. According to Massey, she never met with Rankine to discuss anything about Palladium's insurance requirements and he never provided a copy of the lease.

Rankine disagreed with Massey's recollection and claimed he told her there would be both entertainment and alcohol at the premises, although he

considered banquets and weddings to be entertainment. Rankine admitted that he told Massey Palladium did not have a liquor license for the premises. He also stated that he met with Massey and provided her with a copy of the lease, the front of which described the use for the demised premises as a "dining hall, bar restaurant, club." He claimed that the application Massey completed stated that alcohol would be served on the premises and that the lease's description of Palladium's uses obviously inferred that alcohol would be served. In addition, Rankine believed that the premium he paid for insurance included umbrella coverage.

On the night that plaintiff's husband was killed, Palladium rented out the premises to a third party for a concert. Under the terms of its rental, Palladium was responsible for providing security at the premises. After plaintiff notified Palladium of her claim and it turned it over to its insurance carrier, Palladium received notification that coverage was denied under the exclusion for assault and battery.

After her husband's death, plaintiff filed suit alleging that 48 Branford and its tenant Palladium were negligent in failing to provide adequate security for the event, which was a proximate cause of her husband's death. Through a later amendment to her complaint, plaintiff joined the Agency and Massey, alleging

that they were negligent in failing to obtain proper coverage for Palladium. Prior to trial, the court granted 48 Branford's motion for summary judgment and the Agency's and Massey's motion to sever plaintiff's claims against them for trial.

The court conducted a bench trial limited to plaintiff's claims against Palladium. At the bench trial, neither Palladium nor Rankine presented a defense to plaintiff's claims because prior to trial, plaintiff voluntarily dismissed her claim against Rankine in exchange for his agreement to cooperate in her pursuit of the claims against the Agency and Massey, the only remaining defendants in the case. After considering the evidence, the trial court entered judgment on January 26, 2017, in favor of plaintiff and against Palladium in the amount of $1,000,000.

The court later presided over a jury trial of plaintiff's professional negligence claims against the Agency and Massey. At the conclusion of trial, the jury was asked to determine whether the Agency and Massey "deviated from the standard of care required of an insurance broker," and, if so, to also determine causation. The jury was not asked to determine damages as those were established in the earlier bench trial. The jury rendered a verdict on May 5, 2017, finding that the Agency and Massey did not "deviate[] from the standard of care required of an insurance broker."

7

Following the jury verdict, plaintiff moved for a new trial. In support of her argument, plaintiff raised the same contentions she now raises on appeal. The trial court denied plaintiff's motion on June 23, 2017, stating its reasons in a cogent eleven-page written decision. This appeal followed.

II.

We begin our review by considering plaintiff's contention that the trial court improperly did not disclose to the jury that she was suing in her administrative capacity and only disclosed that she suffered a loss without any further explanation. In response to the Agency's and Massey's motion in limine, the trial court concluded that evidence of plaintiff's status and the nature of her loss were not relevant or probative "and [did] nothing more nor less than inflame the jury." Referring to the fact that plaintiff's damages were established in the earlier bench trial, the trial court explained that information about plaintiff's husband having been killed at the premises would be too prejudicial. The trial court stated:

> To tell . . . the jury otherwise and to move beyond the issue of professional negligence would be to create a situation where the liability relative to the underlying cause of action would become fair game. And [the court is] not [going to] allow that to happen, because to do that would . . . essentially denigrate the . . . determination that has already been made via the entry of the judgment.

A-4858-16T2

. . . .

> To do anything [else] would just cause confusion to the jury and . . . have a great potential for prejudicing the [d]efendant when really all the jury has to determine is the existence of professional negligence of an insurance broker.

In its statement of the case to the jury, the trial court identified plaintiff by name and in its final charge, explained that plaintiff had suffered a loss. According to plaintiff, the court's failure to properly inform the jury of her status and her loss violated her constitutional rights and her free access to the courts. We disagree.

Our review of a trial judge's evidential rulings is "limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). Therefore, "we will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Ibid. The same standard of review applies to a trial court's "determining both the relevance of the evidence to be presented [under Rule

401] and whether its probative value is substantially outweighed by its prejudicial nature" under Rule 403. Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999); N.J.R.E. 401; N.J.R.E. 403; see also State v. Lykes, 192 N.J. 519, 534 (2007).

"Our analysis of the trial court's evidentiary ruling begins with the question of relevancy, 'the hallmark of admissibility of evidence.'" Griffin, 225 N.J. at 413 (2016) (quoting State v. Darby, 174 N.J. 509, 519 (2002)). Relevant evidence is defined as evidence that has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Ibid. (quoting N.J.R.E. 401). "Courts consider evidence to be probative when it has a tendency 'to establish the proposition that it is offered to prove.'" State v. Burr, 195 N.J. 119, 127 (2008) (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985)). The evidence must be probative of a fact that is "really in issue in the case," as determined by reference to the applicable substantive law. State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

Under Rule 401, "[e]vidence need not be dispositive or even strongly probative in order to clear the relevancy bar." Ibid. Moreover, "[t]he proponent need not demonstrate that the evidence can, in and of itself, establish or disprove

a fact of consequence in order to meet the benchmark of [Rule] 401." State v.

Cole, 229 N.J. 430, 448 (2017). "Once a logical relevancy can be found to

bridge the evidence offered and a consequential issue in the case, the evidence

is admissible, unless exclusion is warranted under a specific evidence rule."

Burr, 195 N.J. at 127; see N.J.R.E. 402.

Under Rule 403, a trial court may exclude relevant evidence "if its

probative value is substantially outweighed by the risk of (a) undue prejudice,

confusion of issues, or misleading the jury or (b) undue delay, waste of time, or

needless presentation of cumulative evidence." In general, "[e]vidence claimed

to be unduly prejudicial [can be] excluded only when its 'probative value is so

significantly outweighed by [its] inherently inflammatory potential as to have a

probable capacity to divert the minds of the jurors from a reasonable and fair

evaluation' of the issues in the case." Griffin, 225 N.J. at 421 (quoting State v.

Koskovich, 168 N.J. 448, 486 (2001) (second alteration in original)). Under

Rule 403, excludable evidence includes evidence that pertains to subordinate

issues. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt.

6 on N.J.R.E. 403 (2018) (addressing excludable evidence in a criminal trial).

"[W]hen a party challenges the admission of evidence under [Rule] 403, the

question is not whether the challenged testimony will be prejudicial to the

objecting party, 'but whether it will be unfairly so.'" Griffin, 225 N.J. at 421 (quoting Stigliano v. Connaught Labs., Inc., 140 N.J. 305, 317 (1995)). If the challenged evidence does not meet that standard, "evidence that has overwhelming probative worth may [still] be admitted even if highly prejudicial." Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001) (quoting Green, 160 N.J. at 496).

"The mere possibility that evidence could be prejudicial does not justify its exclusion." State v. Swint, 328 N.J. Super. 236, 253 (App. Div. 2000). "It is not enough for the opposing party to show that the evidence could be prejudicial; '[d]amaging evidence usually is very prejudicial but the question . . . is whether the risk of undue prejudice [is] too high.'" Cole, 229 N.J. at 448 (alterations in original) (emphasis omitted) (quoting State v. Morton, 155 N.J. 383, 453-54 (1998)). While evidence may be damaging, "the danger of undue prejudice" is not enough to "outweigh probative value so as to divert jurors 'from a reasonable and fair evaluation of the basic [ultimate] issue . . . .'" State v. Moore, 122 N.J. 420, 467 (1991) (quoting State v. Sanchez, 224 N.J. Super. 231, 249-50 (App. Div. 1988)).

Applying these guiding principles, we conclude that the trial court did not abuse its discretion by excluding evidence of plaintiff's status as administrator

of her husband's estate after finding it was not relevant and even if it was, its prejudicial effect substantially outweighed its limited probative value. Plaintiff's status was not probative of "the circumstances of the underlying [claim that was] the focus," of the trial. Bardis v. First Trenton Ins. Co., 199 N.J. 265, 277 (2009) (addressing "whether [an] insurer should be identified in [a] UIM trial by its own name"). We therefore agree with the reasons stated by the trial court in response to the motion in limine and we conclude that the trial court properly performed its gatekeeper function in its determination to exclude the irrelevant information.

Plaintiff's arguments to the contrary are without merit. Her status as an administrator or the fact that her husband was killed at the subject premises were not relevant even to any subordinate issue in the case, especially where there was no dispute that she suffered a loss or as to the value of the loss. Moreover, her arguments that the court violated her constitutional rights when it properly exercised its discretion by not allowing the jury to know her status or the facts about her loss are legally unsupported and without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The jury knew she was a plaintiff who had suffered a loss who alleged that it was caused by defendants' negligence. Nothing more was required and the admission of the excluded

information clearly had the propensity to "inflame" and confuse the jurors about the issue they had to decide.

### III.

We turn to plaintiff's next contention regarding defense counsel's remarks during his summation, which plaintiff argues amounted to counsel telling the jury that "defendants would have to 'pay' any judgment out of their own pocket[s]." According to plaintiff, in Tomeo v. N. Valley Swim Club, 201 N.J. Super. 416, 420 (App. Div. 1985), we found such comments impermissible where "[t]he fact [was] that defendant [was] fully insured . . . ." The circumstances here, however, are distinguishable from the circumstances in Tomeo.

At trial in this case, defense counsel described the history of the Agency as testified to by Massey and then stated on more than one occasion that it would be unfair to ask that defendants "pay for the sins of someone else" and "pay for [Kacy's] sins, [and] his lies." Plaintiff, however, never objected to counsel's comments.

Because plaintiff did not object to the challenged statements at trial, we review for plain error the trial court's decision allowing the statement to be made to the jury. Under that standard, "[a]ny error or omission shall be disregarded

by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (quoting R. 2:10-2). "Relief under the plain error rule, . . . at least in civil cases, is discretionary and should be sparingly employed." Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (citation omitted). In our review of a challenge to counsel's summations, we presume that opposing counsel will object to summation comments which unfairly characterize the evidence, and consider the failure to do so "as 'speaking volumes about the accuracy of what was said.'" Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008) (quoting Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 495 (2001)). Applying that standard, we find no error, let alone plain error, in the court not sua sponte striking counsel's comments or issuing a curative instruction.

In Hayes v. Delamotte, 231 N.J. 373, 387-88 (2018), the Supreme Court reviewed the well-settled parameters of permissible comments that can be made during a summation. Quoting extensively from our opinion in Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999), the Court stated the following:

> [C]ounsel is allowed broad latitude in summation. That latitude is not without its limits, and counsel's comments must be confined to the facts shown or reasonably suggested by the evidence introduced

A-4858-16T2

during the course of the trial. Further, counsel should not misstate the evidence nor distort the factual picture. Within those limits, however, [c]ounsel may argue from the evidence any conclusion which a jury is free to reach. Indeed, counsel may draw conclusions even if the inferences that the jury is asked to make are improbable. . . .

[Hayes, 231 N.J. at 387-88 (alterations in original) (citations omitted).]

Here, we conclude that plaintiff's arguments about counsel's comments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, counsel's statements related to defendants being unfairly held responsible for Palladium's inadequate insurance coverage due to Rankine's failure to properly disclose the true nature of Palladium's business operations.[1] Unlike in Tomeo, counsel's comments here were not directed to defendants being financially ruined by having to pay "out of their pocket" for a judgment that would in fact be paid by their professional liability insurance carrier. See Tomeo, 201 N.J. Super. at 420. We find no reversible error in the trial court's actions.

---

[1] The Cambridge Dictionary defines the term "pay the price" as "to experience the bad result of something you have done." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/pay-the-price (last viewed Jan. 3, 2019).

IV.

Next, we address plaintiff's challenges to the trial court's jury instructions. At trial, the court charged the jury as to the law applicable to plaintiff's negligence claim by modifying the model jury charge for an architect or engineer. See Model Jury Charges (Civil), 5.52, "Professional Liability of an Architect/Engineer" (approved Nov. 1995). Specifically, the jury was given the following charge relating to Massey's duty:

> An insurance broker represents that he/she has and will use the degree of knowledge, skill, judgment and taste ordinarily possessed and used by the average insurance broker in the profession. . . . [A]n insurance broker has the duty to have and to use that degree of judgment, knowledge, skill and taste which insurance brokers of ordinary ability possess and exercise, in the same or similar communities, at the time the insurance broker performs his/her services. This is the standard by which to judge . . . Massey in this case.

The trial court rejected plaintiff's request at the charge hearing that the jury be instructed with language derived from the Supreme Court's holding in Aden v. Fortsh, 169 N.J. 64 (2001). Specifically, plaintiff requested that the jury be charged with the following:

> Insurance brokers such as [defendants] hold themselves out as having more knowledge than members of the public with regard to insurance coverage and insurance policies. A broker is not just an order taker responsible only for completing forms and accepting commissions.

17

> She is a fiduciary who must give appropriate advice as to coverage needed for an insured's business.

Plaintiff contends that this exact language "should have been instructed [to the jury]" because it "pertain[ed] to the duty owed by insurance brokers" and the court's charge without the language was insufficient.

Plaintiff also argues that the court "failed to give the jury specific instructions tailored to the facts of the case" and as a result, the court gave "the jury a charge which was not meaningful to them because it did not incorporate" those facts. Specifically, plaintiff asserts that the jury did not receive information about: 1) Massey's "admission that she failed to inform [Rankine] that there was an assault and battery exclusion in [Palladium]'s policy;" 2) the fact that "Rankine gave [Massey] a copy of the lease" setting forth the use of the rental space; 3) that Massey admitted to "complet[ing] the insurance application for [Palladium] which stated that 'all alcohol [would be] served within legally allowable time frames;'" and 4) Massey's admission that "she insured [Rankine] for Reggae concerts he had run in 2006, 2009[, and] 2010 so she knew that [Rankine] was in this line of business." According to plaintiff, the "court's failure to explain to the jury" the law within the context of the case resulted in a jury instruction that "may have misled the jury." We disagree.

When a party raises an objection at trial to a jury charge, we review their challenge to the jury charge for harmless error. Estate of Kotsovska, ex rel. Kotsovska v. Liebman, 221 N.J. 568, 592 (2015). That is, "the 'reviewing court should reverse on the basis of [a] challenged error unless the error is harmless.'" Ibid. (quoting Toto v. Ensuar, 196 N.J. 134, 144 (2008)). An error is harmful when it is "clearly capable of producing an unjust result." Ibid. (quoting R. 2:10–2). In reviewing such challenges, "a court must examine the charge as a whole, rather than focus on individual errors in isolation." Ibid. (quoting Toto, 196 N.J. at 141).

While proper jury charges are essential to a fair trial, Reynolds v. Gonzalez, 172 N.J. 266, 288 (2002), "[e]rroneous instructions constitute reversible error 'only if the jury could have come to a different result had it been correctly instructed.'" Cockerline v. Menendez, 411 N.J. Super. 596, 617 (App. Div. 2010) (quoting Victor v. State, 401 N.J. Super. 596, 617 (App. Div. 2008)). Generally, we "will not disturb a jury's verdict based on a trial court's instructional error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).

 A-4858-16T2

When charging the jury, a court need "set forth in clearly understandable language the law that applies to the issues in the case." Little v. Kia Motor Am., Inc., 455 N.J. Super. 411, 436-37 (App. Div. 2018) (quoting Toto, 196 N.J. at 144). A jury charge is the "road map that explains the applicable legal principles, outlines the jury's function, and spells out 'how the jury should apply the legal principles charged to the facts of the case.'" Id. at 437 (quoting Toto, 196 N.J. at 144). To create such a roadmap, the court should tailor the jury charge to the facts of the case. Estate of Kotsovska, 221 N.J. at 591-92.

"Generally speaking, the language contained in any model charge results from the considered discussion amongst experienced jurists and practitioners." Flood v. Aluri-Vallabhaneni, 431 N.J. Super. 365, 383-84 (App. Div. 2013). Thus, there is a "presumption of propriety that attaches to a trial court's reliance on the model jury charge . . . ." Estate of Kotsovska, 221 N.J. at 596. If a trial court relies upon a model jury charge, the court must adjust its contents, as necessary, to conform to the particular facts of a given case. Torres v. Pabon, 225 N.J. 167, 188 (2016).

Applying these guiding principles, we first conclude that plaintiff's reliance upon Aden is inapposite and there is no merit to plaintiff's contention that the trial court erred by not including the language she suggested from that

20

case. In Aden, the Court rejected a broker's attempt to assert an insured's "failure to read the insurance policy" "as comparative negligence in an action against the broker for negligent failure to procure insurance." Aden, 169 N.J. at 82. Confronting the issue of whether such an instruction was warranted, the Court held that "professionals may not diminish their liability under the Comparative Negligence Act when the alleged negligence of the client relates to the task for which the professional was hired." Id. at 78.

In deciding that case, the Court did not find any error in the trial court's charge to the jury, which resembled the charge given in the case before us and did not include the language suggested by plaintiff. See id. at 73. The trial court charged the jury in Aden that the law

> imposes on the insurance broker the duty or obligation to have and to use that degree of skill and knowledge which insurance brokers of ordinary ability and skill possess and exercise in the representation of a client, such as the plaintiff . . . in this case. This is the standard by which to judge the defendant . . . in his placement and advice as to the insurance on this dwelling, condominium dwelling unit.
>
> [Aden, 169 N.J. at 73.]

Both the charge in Aden and in the present appeal explain an insurance broker's duty of care to his or her clients and provide the jury with clear guidelines.

We find plaintiff's remaining contention that the trial court should have essentially argued in its charge facts plaintiff claimed were established by the evidence to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, the trial court's use of the modified jury charge language for professional negligence satisfied its obligation to properly instruct the jury in this case. We discern no error in the court's charge and even if there was, we conclude it was harmless.

V.

Finally, we consider plaintiff's contention that the jury's verdict was against the weight of the evidence. In support of her contention, plaintiff again relies upon facts she argues were established at trial that supported her case. For example, she cites to Massey's statement that she did not tell Rankine there was an exclusion for assault and battery in Palladium's policy and that she was aware of his experience in concert productions.

At trial, Massey testified that Rankine contacted her to obtain insurance for a banquet hall that he would be opening to use for weddings and birthday parties. According to Massey, Rankine sought general liability insurance and an umbrella policy. Based on her experience, assault and battery coverage is necessary only if alcohol will be served. According to Massey, Rankine said

22

the hall would be open from approximately 12:00 noon to 8:00 pm and would include a daytime café, and he would not be serving alcohol at the location. Ultimately, Massey did not obtain an umbrella policy for Rankine because Rankine did not pay for it. She also explained that she did not inform Rankine that the liability policy she obtained for Palladium excluded coverage for assault and battery because he stated that no alcohol would be served, and if he had informed her that alcohol would be served, she would have secured liquor liability insurance as well as coverage for assault and battery.

Rankine testified that he informed Massey that he would be using the facility for banquets, wedding receptions, and other events, and that he did not have a liquor license for the location, although his business partner had been in the process of obtaining a liquor license. When asked if he told Massey that there would be no alcohol served on the premises, Rankine indicated that he mentioned the possibility that those who rented the venue could obtain a one-day alcohol permit at city hall. Rankine also testified that he was unaware that the insurance policy had an assault and battery exclusion.

After the jury returned its verdict, the trial court considered plaintiff's challenge to the weight of the evidence when deciding plaintiff's motion for a new trial. It concluded that based on the jury's credibility determinations, it was

free to accept defendants' version of events and reject plaintiff's factual contentions as testified to by Rankine if it found his testimony at trial was not credible. We agree.

We review a party's claim that the weight of the evidence was insufficient to support a verdict, only where, as here, the issue was first addressed by the trial court in response to a motion for a new trial. R. 2:10-1. "[O]n appeal from decisions on motions for a new trial," we apply "the same [standard] as that governing the trial judge['s determination]—whether there was a miscarriage of justice under the law." Hayes, 231 N.J. at 386 (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Ibid. (quoting Risko, 206 N.J. at 521-22).

Applying this standard, we discern no reason to disturb the jury's determination in this case. As the trial court found, there was conflicting evidence of what transpired between defendants and Rankine relative to the insurance at issue. The jury had sufficient evidence to consider and, after

24

making credibility determinations, it was free to accept one version of the events over the other. There was no miscarriage of justice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4858-16T2