952 A.2d 463

BLASE J. TOTO AND BETTY TOTO, PLAINTIFFS–APPELLANTS, v. SHERIFF'S OFFICER ROLANDO ENSUAR AND SHERIFF'S OFFICER MICHAEL SCHULZE, DEFENDANTS–RESPON-DENTS, AND MONMOUTH COUNTY SHERIFF JOSEPH W. OXLEY, MONMOUTH COUNTY SHERIFF'S OFFICE AND "JOHN DOES # 1–3" (THESE NAMES BEING FICTITIOUS AS TRUE IDENTITIES ARE UNKNOWN), DEFENDANTS.

Argued April 7, 2008—Decided August 4, 2008.

136

Jeffrey S. Downs argued the cause for appellants (*Wong Fleming*, attorneys; *Mr. Downs, Daniel C. Fleming* and *Linda Wong*, on the briefs).

David A. Laughlin argued the cause for respondents (*Stout & O'Hagan*, attorneys; *Linda Grasso Jones*, on the letter brief).

Justice WALLACE, JR., delivered the opinion of the Court.

In this case we decide whether the verbal threshold, *N.J.S.A.* 59:9-2(d), of the New Jersey Tort Claims Act (Act), *N.J.S.A.* 59:1-1 to 12-3, which essentially requires an objective permanent injury to recover damages, applies to a willful misconduct claim against a public employee. Additionally, we decide whether the trial court's failure to charge the jury that the Act's good faith defense, *N.J.S.A.* 59:3-3, did not apply to plaintiff's false arrest/false imprisonment claim requires a new trial. The Appellate Division held that the verbal threshold applies to a public employee's act of willful misconduct and that, although the trial court erred in its instructions on the good faith defense, that error was harmless. We hold that when a public employee's actions constitute willful misconduct, the plaintiff need not satisfy the verbal threshold and may instead recover the full measure of damages "applicable to a

person in the private sector." *N.J.S.A.* 59:3–14(a). We further hold that the erroneous instructions on the good faith defense require a new trial.

## I.

Plaintiff Blasé Toto presented evidence at trial to show that on May 3, 2001, he entered the Monmouth County Courthouse to provide expert testimony for a patient in a pending matter. Plaintiff placed his briefcase on the conveyor belt at the security checkpoint, walked through the metal detector, and then went to the restroom while waiting for the Sheriff's Officer assigned to screen all courthouse entrants, defendant Michael Schulze, to inspect his briefcase. When plaintiff returned, Schulze told him to extend his hand and then dropped a pocketknife into it, saying that plaintiff could either return the knife to his car or else have it confiscated. Plaintiff initially was confused because he had passed through security in another courthouse that same morning without incident. Plaintiff told Schulze that he was there to testify in a case and asked the officer to hold the knife until he left the courthouse. Schulze responded, "Don't you speak English?" Plaintiff complained that the officer was rude, but decided to take the pocketknife to his car.

Plaintiff testified that when he returned to the courthouse, he again passed through security after which the following exchange occurred.

> [Schulze] goes, you think I was rude to you before? I said, yeah, I think you were very rude. He goes, well, don't you think it's inappropriate to bring a knife into a courthouse?
>
> I said, look, I didn't even know it was in there. He said, don't you raise your voice at me. I'll lock you up. I said, well, you know, do whatever you feel you need to do.
>
> And he said to me, one more word—I'll never forget this—he said, one more word out of your mouth and I'm going to arrest you.

According to plaintiff, he then walked away and took the elevator to the floor where he was scheduled to meet the attorney, John Rizzo, who had retained him as an expert witness. There,

plaintiff was explaining the incident to Rizzo when Schulze and at least one other officer exited the elevator and approached, arrested, and handcuffed plaintiff. According to plaintiff, Schulze and Officer Rolando Ensuar then escorted him down the hall to a processing room. As they passed a group of students, plaintiff yelled to the students, "When you grow up, get an education. Don't wind up like these guys."

Plaintiff next testified that as soon as they turned the corner, Ensuar demanded that he shut his mouth before slamming him into a concrete wall and exclaiming, "Now you're going to be charged with assaulting a police officer." Plaintiff claimed he felt woozy and experienced pain in his upper back and neck as a result of that incident.

Finally, the three men entered a processing room where plaintiff was handcuffed to a bench. At one point, plaintiff heard Ensuar remark to Schulze, "Let me know when you're done writing your reports so I can write mine about the assault." About an hour later, plaintiff was released and returned to the courtroom to testify. Several days later, plaintiff received a summons in the mail charging him with a petty disorderly persons offense.

Plaintiff testified that he never used profanity during the entirety of the encounter and that when he left the courthouse, he returned to his chiropractic office where an associate treated his injuries. Plaintiff said that he subsequently underwent additional treatment for his neck pain, including surgery in December 2001. Plaintiff testified that he suffered occasional flare-ups of discomfort, but that the pain did not prevent him from working full-time. Additionally, plaintiff described a previous neck injury from an auto accident in 1997 that also resulted in surgery.

Plaintiff introduced evidence from additional witnesses. First, John Rizzo testified that he had retained plaintiff as an expert witness in a case scheduled for trial on May 3, 2001. Rizzo said that plaintiff was explaining why he was late for that appearance when several Sheriff's Officers arrested plaintiff for disorderly

conduct. Rizzo testified that he pleaded with the officers to let plaintiff testify, but that they refused to do so.

Next, Diane Whitaker testified that she did not know plaintiff prior to May 3, but that she was in the courthouse that day for a small claims matter when she observed a disturbance in the hallway. Whitaker said she noticed two Sheriff's officers approach a man, handcuff him, and drag him off by his arms. She said that the man, whom she later learned was plaintiff, cooperated and did not use any profanity.

Plaintiff additionally presented expert testimony to establish both the wrongful nature of defendant's conduct and the severity of his injuries.

Schulze and Ensuar offered an account of the events that differed from plaintiff's in several respects. Schulze testified that when he discovered the knife in plaintiff's bag, he told plaintiff to take it to his car or it would be confiscated. Schulze described what happened next.

> [Plaintiff] said, this is f* * *ing ridiculous. He looked at me, and at that point I take the knife, he has his hand out, take the knife and give it back to him. He has it in his hand, he raises it up, I guess as to show me, look, it's only a small knife. He raises it up, he goes to open it. I put my hand out, I said, don't open the knife. He then says, you don't have to be so f* * *ing rude. And I said, just take it back to your car. And he then exited the building.

Schulze testified that when plaintiff returned from his car, he told plaintiff that he was just doing his job, but that plaintiff responded, "You were very f* * *ing rude." Schulze said he apologized for the earlier exchange, but that plaintiff without provocation blurted out, "You have nothing f* * *ing better to do." According to Schulze, a middle-aged woman and her teen-aged daughter heard that comment. Schulze recalled that following plaintiff's arrest, plaintiff remarked to some students in the hallway, "Don't be like these morons, useless ... get an education, go to school." Schulze further recalled that, as they approached the Sheriff's office, plaintiff stopped suddenly, turned his shoulder into Ensuar's chest, and shouted a profanity. Schulze described

how Ensuar "pivoted plaintiff away from him" and then secured him.

Ensuar's description of the incidents following plaintiff's arrest paralleled Schulze's testimony. Ensuar denied that he slammed or pushed plaintiff into a wall but acknowledged that after plaintiff stopped abruptly, he told plaintiff not to do it again or he would press additional charges.

At the conclusion of the evidentiary phase of the trial but prior to charging the jury, the trial court held a charge conference in which plaintiff's counsel urged the court not to apply the verbal threshold [1] to plaintiff's claim of willful misconduct by defendants. Concluding that the recent case of *DelaCruz v. Borough of Hillsdale*, 183 *N.J.* 149, 870 *A.*2d 259 (2005), controlled the issue, the trial court ruled that even when a public employee's act was found to be willful misconduct, a plaintiff must vault the verbal threshold in order to recover. Consequently, the trial court incorporated the verbal threshold requirement as to each defendant in its charge to the jury. To assist the jury in its findings, the court then submitted the following interrogatories to the jury:

1. Did defendant [Schulze's] actions constitute willful misconduct?

 If you have answered "No" to Question 1, please proceed to Question 6. If you have answered "Yes" to Question 1, please proceed to Question 2.

2. Did the willful misconduct of defendant [Schulze] proximately cause a substantial permanent loss of a bodily function, resulting in a substantial inability to perform many of the functions Plaintiff Toto previously enjoyed?

 If you have answered "No" to Question 2, please proceed to Question 6. If you have answered "Yes" to Question 2, please proceed to Question 3.

3. How much money would fairly and completely compensate Plaintiff Toto for the pain and suffering he sustained as a result of Defendant [Schulze's] actions?

---

[1] The verbal threshold is a two-pronged test that requires a plaintiff seeking to collect pain and suffering damages under *N.J.S.A.* 59:9–2(d) to show "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." *See Knowles v. Mantua Twp. Soccer Ass'n*, 176 *N.J.* 324, 329, 823 *A.*2d 26 (2003).

If you awarded compensatory damages in Question 3, please proceed to Questions 4 and 5. If no compensatory damages are awarded, please proceed to Question 6.

4. How much money would fairly and completely compensate the Plaintiff's wife for the loss of Plaintiff's services?

Please proceed to Question 5.

5. Do you find the Plaintiff Toto is entitled to punitive damages as a result of the actions of Defendant [Schulze]?

Please proceed to Question 6.

6. Did Defendant Ensuar's actions constitute willful misconduct?

If you have answered "No" to Question 6, you are finished with your deliberations. If you have answered "Yes" to question 6, please proceed to Question 7.

7. Did the willful misconduct of defendant Ensuar proximately cause a substantial permanent loss of a bodily function, resulting in a substantial inability to perform many of the functions plaintiff Toto previously enjoyed?

If you have answered "No" to Question 7, you are finished with your deliberations. If you have answered "Yes" to Question 7, please proceed to Question 8.

8. How much money would fairly and completely compensate Plaintiff Toto for the pain and suffering that he sustained as a result of Defendant Ensuar's actions?

If you awarded compensatory damages in Question 8, please proceed to Questions 9 and 10. If no compensatory damages are awarded, you are finished with your deliberations.

9. How much money would fairly and completely compensate the Plaintiff's spouse for the loss of Plaintiff's services?

Please proceed to Question 10.

10. Did you find that Plaintiff Toto is entitled to punitive damages as a result of the actions of Defendant Ensuar?

Ultimately, the jury found that Schulze's actions did not constitute willful misconduct, but that Ensuar's did. The jury concluded, however, that Ensuar's willful misconduct did not proximately cause a substantial permanent loss of a bodily function to vault the verbal threshold, so no damages were awarded. The trial court entered judgment in favor of defendants.

Plaintiff appealed, asserting that the trial court erred in its application of the verbal threshold to the jury's finding that Ensuar committed willful misconduct, and in its charge to the jury on the good faith defense of *N.J.S.A.* 59:3–3 for plaintiff's false arrest/false imprisonment claim. The Appellate Division affirmed in an unpublished opinion. Constrained by its reading of *Dela-*

*Cruz,* the panel held that it must conclude that `N.J.S.A.` 59:3–14 does not eliminate the necessity of a plaintiff to satisfy the verbal threshold. Next, although the panel agreed with plaintiff's contention that the trial court did not properly charge the jury regarding the good faith defense, it held that any error was harmless as to Schulze because plaintiff failed to vault the verbal threshold, and that the issue was moot as to Ensuar because the jury found he committed willful misconduct.

We granted plaintiff's petition for certification. 192 *N.J.* 595, 934 *A.2d* 637 (2007).

## II.

Plaintiff argues that it was error to require him to vault the verbal threshold in the face of a jury finding of willful misconduct. He contends that both the trial court and the Appellate Division misread *DelaCruz,* and that this Court should clarify that *DelaCruz* did not abrogate the exception to the verbal threshold contained in *N.J.S.A.* 59:3–14(a). Further, plaintiff maintains that the Appellate Division's conclusion that the jury instructions concerning the good faith defense were harmless error was based on an erroneous application of *DelaCruz,* and therefore those instructions were plain error.

In contrast, defendants contend that the Appellate Division correctly concluded that the verbal threshold applies to willful misconduct committed in the course or scope of public employment. Defendants rely on this Court's holdings in *DelaCruz* and *Velez v. City of Jersey City,* 180 *N.J.* 284, 850 *A.2d* 1238 (2004), in support of their argument that the verbal threshold set forth in *N.J.S.A.* 59:9–2d applies to all claims under the Act. Defendants also assert that because plaintiff failed to object to the charge on the good faith defense, the Appellate Division should not have addressed that argument. Defendants further urge that even if the Court addresses that issue, there is no merit to plaintiff's argument.

## III.

Preliminarily, it is fundamental that the jury charge should set forth in clear understandable language the law that applies to the issues in the case. *Mogull v. CB Commercial Real Estate Group, Inc.,* 162 *N.J.* 449, 464, 744 *A.*2d 1186 (2000). The jury charge is a road map that explains the applicable legal principles, outlines the jury's function, and spells out "how the jury should apply the legal principles charged to the facts of the case at hand." *Viscik v. Fowler Equip. Co.,* 173 *N.J.* 1, 18, 800 *A.*2d 826 (2002).

In construing a jury charge, a reviewing court must consider the charge as a whole to determine whether the charge was correct. *Ibid.* When a party objects at trial, a reviewing court should reverse on the basis of that challenged error unless the error is harmless. *R.* 2:10–2. However, when the party fails to object, the reviewing court must determine whether any error in the charge was "of such a nature as to have been clearly capable of producing an unjust result." *Mogull, supra,* 162 *N.J.* at 464, 744 *A.*2d 1186 (quoting *R.* 2:10–2). If not, the error is deemed harmless and disregarded.

### A.

We first focus on the particular provisions of the Act that undergird this appeal. Three sections of the Act are relevant to our consideration of the issues.

First, *N.J.S.A.* 59:9–2(d), which we refer to as the "verbal threshold," provides that:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

This Court has established "a two-pronged test that a plaintiff must satisfy in order to collect pain and suffering damages under *N.J.S.A.* 59:9–2d." *Knowles v. Mantua Twp. Soccer Ass'n,* 176 *N.J.* 324, 329, 823 *A.*2d 26 (2003). To satisfy the test and vault the threshold, "[a] plaintiff must show '(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial.'" *Ibid.* (quoting *Gilhooley v. County of Union,* 164 *N.J.* 533, 540–41, 753 *A.*2d 1137 (2000) (citation omitted)).

The next relevant section of the Act is *N.J.S.A.* 59:3–14, which provides that:

a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or *constituted a crime, actual fraud, actual malice or willful misconduct.*

b. *Nothing in this act shall exonerate a public employee from the full measure of recovery* applicable to a person in the private sector *if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.*

[Emphasis added.]

By its plain, unambiguous, and specific terms, *N.J.S.A.* 59:3–14(a) creates an exception to the verbal threshold. We recently explained that " '[i]t is the intent of this provision that a public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability and damages contained in this [A]ct.'" *Velez, supra,* 180 *N.J.* at 291, 850 *A.*2d 1238 (quoting *N.J.S.A.* 59:3–14 comment) (second alteration in original); *see also Jobes v. Evangelista,* 369 *N.J.Super.* 384, 400, 849 *A.*2d 186 (App.Div.2004) (holding that "actual malice" proviso of *N.J.S.A.* 59:3–14(b) encompasses actual malice as element of plaintiff's causes of action and relieves plaintiffs of limitations of *N.J.S.A.* 59:9–2(d) by reason of jury's finding of actual malice); *Torres v. City of Perth Amboy,* 329 *N.J.Super.* 404, 406, 748 *A.*2d 125 (App.Div.2000) (holding that only exception to absolute immunity for injuries sustained by third persons due to police vehicular pursuits is exception for "willful misconduct" in *N.J.S.A.* 59:3–14(a)).

The final section of the Act that we need to consider is *N.J.S.A.* 59:3–3, which provides that "[a] public employee is not

liable if he acts in good faith in the execution of enforcement of any law," but that *"[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment."* (Emphasis added). We explained in *Alston v. City of Camden,* 168 *N.J.* 170, 186, 773 *A.*2d 693 (2001), that there were two alternative components to the good faith defense. In order to meet the good faith standard, "[a] public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" *Ibid.* The burden of proof is ·upon the employee, who must prove either of those components in order for the good faith immunity to attach. *Ibid.* More importantly, this section makes clear that the good faith defense is not available when a public employee is liable for false arrest or false imprisonment. *DelaCruz, supra,* 183 *N.J.* at 163, 870 *A.*2d 259.

B.

■ We turn now to apply the relevant sections of the Act to the·case at hand. Plaintiff sought a jury charge explaining that if either defendant was found to have committed willful misconduct, then the verbal threshold did not apply, in which case plaintiff would be entitled to the full measure of damages without regard to the verbal threshold. The trial court declined to give such an instruction. We conclude that that was error.

The trial court should have explained to the jury that if it found that either defendant committed willful misconduct, then plaintiff was entitled to recover the full measure of damages without regard to the verbal threshold. As noted above, the jury found that Ensuar committed willful misconduct. Thus, the verbal threshold did not apply to plaintiff's claim against Ensuar. Because the jury was denied the opportunity to evaluate the full extent of plaintiff's damages, the jury instruction was clearly capable of producing an unjust result. *See R.* 2:10–2.

Nevertheless, defendants assert that *DelaCruz* and *Velez* support the trial court's charge to the jury. We disagree. In *DelaCruz, supra,* we addressed the limited issue of whether the

verbal threshold requirement applies to false arrest and false imprisonment claims. 183 *N.J.* at 153, 870 *A.*2d 259. There, a series of break-ins in the community caused the police to set up several road-blocks. *Id.* at 154, 870 *A.*2d 259. The plaintiff, who had just completed work on a customer's home, turned in a direction away from a nearby road-block, causing the police to pursue and stop his van. *Id.* at 155, 870 *A.*2d 259. Believing that the plaintiff was the person they were looking for, the police ordered the plaintiff out of the van, forced him to the ground, and placed him in handcuffs. *Id.* at 158–59, 870 *A.*2d 259. The police ignored the plaintiff's pleas to check his identity and to call the house where he had been working. *Id.* at 156, 870 *A.*2d 259. Approximately ten minutes later another police officer arrived at the scene, confirmed the plaintiff's identity and released him. *Id.* at 157, 870 *A.*2d 259. The trial court dismissed the plaintiff's false-arrest complaint against the police for failure to meet the verbal threshold, but the Appellate Division reinstated the complaint on appeal. *Id.* at 160, 870 *A.*2d 259. We granted certification and reversed in part. Although we remanded the plaintiff's federal claims for trial, we held that the plaintiff's false arrest/false imprisonment claims must satisfy the verbal threshold of *N.J.S.A.* 59:9–2(d). *Id.* at 164, 870 *A.*2d 259.

Importantly, in *DelaCruz*, we did not address the exception in *N.J.S.A.* 59:3–14 for "willful misconduct" because that was not an issue in that case. Rather, we answered in the affirmative the discrete issue of whether claims of false arrest/false imprisonment, which did not include an assertion of willful misconduct, may be subject to the verbal threshold. To be sure, we did not intend to imply that the verbal threshold must be satisfied for a false arrest/false imprisonment claim when the jury finds that the public employee committed willful misconduct or any of the other exceptions under *N.J.S.A.* 59:3–14.

Nor does *Velez* support defendants' position. In *Velez, supra,* we addressed whether the Act's notice of claim requirements applied to common law intentional tort claims. 180 *N.J.* at 286,

850 *A*.2d 1238. In concluding that the notice provisions of the Act applied to intentional conduct of a public employee, we expressly noted that "[u]nder *N.J.S.A.* 59:3–14, a public employee is not immune if he or she engaged in conduct that 'constituted a crime, actual fraud, actual malice or willful misconduct.' " *Id.* at 294, 850 *A*.2d 1238.

 In summary, neither *DelaCruz* nor *Velez* abrogated the plain and unambiguous language of *N.J.S.A.* 59:3–14(a) that "[n]othing in this Act shall exonerate a public employee from liability if it is established that his conduct ... constituted ... willful misconduct." In that event, the "full measure of recovery applicable to a person in the private sector," *N.J.S.A.* 59:3–14(b), controls. Thus, if the jury finds that the public employee in a false arrest/false imprisonment claim committed willful misconduct, the plaintiff is entitled to recover damages without regard to the limitations of the verbal threshold. Here, it was error to require plaintiff to vault the verbal threshold in the face of a jury finding that Ensuar's actions constituted willful misconduct. A new trial is necessary for the sole purpose of procuring a jury determination on the issue of proximate cause and damages as to Ensuar; there is no need for a jury to decide the willful misconduct issue anew.

### IV.

Next we address plaintiff's contention that the trial court erroneously charged the jury to consider the good faith defense of *N.J.S.A.* 59:3–3 when deciding his false arrest/false imprisonment claims against defendants. Because plaintiff did not object to the charge at trial, we consider whether in the interests of justice we should recognize plain error. *See R.* 2:10–2. We must determine whether any error in the charge had the clear capacity to produce an unjust result. *R.* 2:10–2.

The trial court initially addressed willful misconduct and the good faith defense in its instructions to the jury:

The plaintiff contends that the defendants['] ... conduct constituted willful misconduct. So I will give you the law on willful misconduct now.

The defendants as public employees are not liable if they acted in good faith in the execution and enforcement of the law I'm about to discuss with you.

In order to find that the defendants acted in good faith it is necessary to find that the defendants demonstrated either objective reasonableness or behaved with subjective good faith....

A defendant's actions may be negligent, but negligence does not necessarily prevent a finding of good faith. Willful misconduct requires much more than mere negligence.

Willful misconduct will fall somewhere in the continuum between simple negligence and the intentional infliction of harm. It's somewhere between the two.

... In order to recover for injuries allegedly produced by willful and wanton misconduct ... it must appear that the defendant with knowledge of existing conditions and conscious from such knowledge that injury will likely or properly result from this conduct and with reckless indifference to the consequences conspicuously and intentionally does some wrongful act or omit to discharge some duty which produces the injurious result.

Later, in its instructions, the trial court addressed plaintiff's false arrest/false imprisonment allegations:

Plaintiff must prove by the greater weight of the evidence ... that the defendant intentionally detained or restrained the plaintiff in his personal liberty or freedom of movement by arresting him.

If you find that there was an arrest, then the defendant must prove to you by a greater weight of the evidence that the offense for which the arrest is said to have been made was committed in the defendant's presence.

... Even if you find the offense was committed in the defendant's presence and because of that he arrested the plaintiff, you must still consider whether he restrained the plaintiff only for a reasonable period of time.

If the arrest was proper and the confinement reasonable ... then you must find for the defendant. It's not an unlawful arrest then.

But if you find that there was a confinement and you find that either there was no right to make the arrest, then you must find for the plaintiff.

... If you find that the defendants falsely imprisoned or committed a battery upon the plaintiff, you must determine whether that conduct was a proximate cause of the injuries for which the plaintiff complains. By proximate cause, I refer to a clause [sic] that in a natural and continuous sequence, produces the incident and the resulting injury and without which the resulting injury would not have been received.

Even if there was a false imprisonment or a battery was committed[, if] such conduct was not a proximate cause of the injuries complained of, there cannot be any recovery for compensatory damages. If you find that such conduct was a proximate cause of plaintiff's injuries, he would be entitled to a verdict for compensatory damages in such an amount as would constitute reasonable compen-

sation ... for any physical injury sustained by him and/or emotional distress resulting from the indignity to which he was subjected, subject to the Tort Claims Threshold, which I'm about to discuss.

So even if there's a proximate cause here, he must, the plaintiff must overcome the Tort Claims Act Threshold, which I'm about to discuss.

We noted in *DelaCruz, supra*, that "[t]he objective good faith defense provided in *N.J.S.A.* 59:3-3 does not apply to false arrest or false imprisonment claims." 183 *N.J.* at 163, 870 *A.*2d 259. We explained that our interpretation of the statute was "consonant with the comment's import that '[t]his section does not, however, immunize law enforcement officials from false arrest and false imprisonment,' that 'law enforcement officials are not now immune in the State of New Jersey,' and that 'existing principles of law provide sufficient protection for the officer from frivolous suits.' " *Id.* at 163–64, 870 *A.*2d 259 (quoting *Report of the Attorney General's Task Force on Sovereign Immunity*, 216–17 (1972)) (alteration in original).

■ Here, plaintiff's claims against Schulze and Ensuar included a claim for false arrest or false imprisonment. The Appellate Division found that the trial court erred by improperly charging the jury on the good faith defense, but because the jury found that Ensuar committed willful misconduct, the issue was moot as to him. With respect to Schulze, the panel explained that "even had the jury concluded that [Schulze] failed to act in good faith, given that plaintiff's physical injuries were caused by Ensuar's actions, and plaintiff did not prove psychological injuries sufficient to satisfy the [verbal] threshold, there were no grounds for damages against Schulze." Thus the panel concluded that any error in the charge was harmless. We do not agree.

The failure to instruct the jury that the good faith defense did not apply to plaintiff's claim for false arrest/false imprisonment was clearly erroneous. That erroneous instruction may have influenced the jury in its finding that Schulze did not commit willful misconduct. We conclude that that instruction, coupled with the erroneous charge to the jury that the verbal threshold applies to claims of willful misconduct and false arrest, had the

capacity to taint the entire verdict in favor of Schulze and to produce an unjust result. *R.* 2:10–2. Consequently, we remand for a new trial as to Schulze.

## V.

We reverse in part the judgment of the Appellate Division. We remand for a new trial on liability and damages as to Schulze and for a new trial limited to proximate cause and damages as to Ensuar.

*For reversal in part/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.